469 A.2d 1275

**CITY OF SALISBURY et al.**

v.

**Bramble Wayne PARKS.**

**No. 495, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Jan. 13, 1984.

Certiorari Denied May 28, 1984.

296

Karen L. Ellmore, Salisbury, with whom were Sheldon B. Seidel and Seidel & Baker, Salisbury, on brief, for appellants.

J. Morgan White and Ronald G. Rayne, Salisbury, with whom were Herman Perdue and Perdue, Rayne & Davis, Salisbury, on brief, for appellee.

Argued before LOWE, GETTY and BELL, JJ.

LOWE, Judge.

In this appeal from the judgment entered upon the verdict of a jury of the Circuit Court for Wicomico County, appellants ask six questions, three of which deal with the sufficiency of the evidence to support the verdict in light of the

test to be applied on an appeal from the Workmen's Compensation Commission. The remaining three are primarily procedural and are without merit.

■ The sufficiency question is decidedly closer, but it is so factually, not as a matter of law. That the issue is close factually is attested by the Commission—which must construe the statute to effectuate its benevolent purpose, Md. Ann.Code, Art. 101, § 63—having found that the accidental injury did not arise out of the course of employment. Since the Commission is also compelled to "presume" that the claim comes within the provisions of the article, absent "substantial" evidence to the contrary, Art. 101, § 64(a), the circuit court jury to which an appeal is taken must be persuaded by the claimant not simply to substitute its judgment for the Commission, but do so by finding that the claimant's evidence is sufficiently persuasive to overcome the presumption that "the decision of the Commission shall be prima facie correct." Art. 101, § 56(c).

■ Obviously, that burden would be an impossible one unless the claimant could present some evidence in addition to that which was before the Commission, or persuade the jury to draw different inferences from the same evidence contrary to those drawn by the Commission. Either procedure is permissible in these de novo appeals, *City of Salisbury v. McCoy,* 47 Md.App. 488, 497, 424 A.2d 164 (1981), and in the case before us either would have sufficed; but the additional evidence further clarified and supported the jury's determination that the accidental injury did not arise out of, and in the course of, the appellee-claimant's employment.

From the evidence presented to the jury it was readily inferable that the City of Salisbury required cardiac rescue technicians (CRTs) to develop rescue skills. Appellee-claimant was a CRT employed by the City of Salisbury. Numerous intermediate rescue training courses were offered by the Maryland Fire and Rescue Institute (MFRI) in Salisbury on City property with the co-operation of the City. Notifica-

tion of such courses was placed on the City firehouse bulletin board reserved for training notices but the Fire Chief (who was appellee's superior) was required to exercise his authority in granting or denying individual permission to attend the course because there was the possibility that evening training classes would conflict with night shifts.

Appellee-claimant (and other CRTs including his partner), who felt the responsibility to develop rescue skills as required by their job description, obtained permission to participate in the course with the stipulation that when such conflicts occurred appellee-claimant would obtain a substitute. When he and his partner both had scheduling conflicts, however, one of them would be permitted to attend class as long as one stayed on duty. During such an absence both were still paid. Rescue skills taught in the MFRI course included the use of tools and devices which MFRI often borrowed from the City and if a registrant successfully completed the course his fire station would receive a certificate from MFRI. The appellee was injured while using a rappelling device (not owned by Salisbury) in an attempt to descend from the roof of a garage owned by the City and used by MFRI for this course.

The Court of Appeals has repeatedly made it clear that the use of the term "in the course of employment" as used in the appropriate statute, Art. 101, § 67(6),[1] refers to the place, time and circumstances under which the accident resulting in injury occurs. The term "out of employment" refers to the cause or origin of the accident. See *Knoche v. Cox,* 282 Md. 447, 455, 385 A.2d 1179 (1978), and cases cited. The evidence we have summarized clearly sufficed to permit

---

1. Md.Ann.Code Art. 101, § 67(6) reads as follows:

   "*'Injury,' 'personal injury,' 'accidental injury'* and *'accidental personal injury'* means only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally result therefrom, including frostbite and sunstroke resulting from weather condition, occupational disease and includes an injury caused by the wilful or negligent act of a third person directed against an employee in the course of his employment."

an inference that by requiring the enhancement and development of rescue skills for its benefit, the City extended the scope of appellee-claimant's employment by encouraging and permitting appellee-claimant to take the course therein advertised and "made available" on its premises and in cooperation with the MFRI. *Keene v. Insley,* 26 Md.App. 1, 12, 337 A.2d 168 (1975); *Mack Trucks, Inc. v. Miller,* 23 Md.App. 271, 326 A.2d 186 (1974), *cert. granted,* 273 Md. 721, *aff'd* 275 Md. 192, 338 A.2d 71 (1975).

The trial judge properly submitted the case to the jury along with an instruction setting forth five criteria to be considered with others in determining whether the employment and additional activity were sufficiently related to warrant an award. These were taken from *Moore's Case,* 330 Mass. 1, 110 N.E.2d 764 (1953), as adopted by Judge Oppenheimer's opinion for the Court of Appeals in *Sica v. Retail Credit Co.,* 245 Md. 606, 614–615, 227 A.2d 33 (1967).

" 'This court, in considering cases involving injuries sustained outside the formal scope of the employee's duties, and courts in other jurisdictions which have passed upon the compensability of injuries sustained during organized recreational activities have evolved a number of criteria which may be resorted to in determining whether the employment and the recreation are related with sufficient closeness to warrant an award. For convenience they may be enumerated as follows: (1) The customary nature of the activity, * * * (2) The employer's encouragement or subsidization of the activity, * * * (3) The extent to which the employer managed or directed the recreational enterprise, * * * (4) The presence of substantial pressure or actual compulsion upon the employee to attend and participate, * * * (5) The fact that the employer expects or receives a benefit from the employees' participation in the activity, whether by way of improved employer-employee relationships, * * * through greater efficiency in the performance of the employees' duties, * * by utilizing the recreation as partial compensation or additional reward for their work, or for advertising the

employer's business, or as an actual adjunct of his business. Apart from the existence of employer compulsion, which often might warrant or even require a finding in favor of the employee, the presence or absence of any one of the other factors listed would not necessarily determine the issue. Nor, indeed, is the foregoing enumeration meant to be exclusive of other factors which might appear in a given case. What is required in each case is an evaluation of the significance of each factor found to be present in relation to the enterprise as a whole. Upon such an evaluation must the decision as to the closeness of the connection between the employment and the recreation ultimately rest.' (Asterisks indicate citations omitted). 330 Mass. at 4–5, 110 N.E.2d at 766–67."

Despite the fact that the evidence could inferentially fulfill all five criteria, appellants contend that the instruction was inappropriate because the MFRI course was not a social or recreational activity, but a training program which they claim Larson on Workmen's Compensation distinguishes. The course involved self-improvement argue appellants " 'and self-improvement is primarily the employee's own concern.' " says *Larson's Workmen's Compensation* at § 27.30.

■ This argument, however, is a non sequitur. Even though a program improves an employee personally, the employer can still reap numerous benefits from a training course. The job description requiring the continued development of rescue skills was not for the employee's advancement necessarily. At least implicitly the training would enhance his performance on behalf of the City in his present job. The incidental benefit to appellee-claimant does not ipso facto obviate a comparable or even more substantial benefit to the employer. We fail to see appellants' distinction of the application of these general principles between recreational activities encouraged by an employer and training enhancement activities encouraged by an employer. The

criteria considered were equally applicable under the facts of this case and the instruction was apposite.

Appellants' recitation of facts emphasizes all of the evidence from which a factfinder might infer that this course, taken by appellee, overtrained him for his CRT role and, consequently, was of more benefit to the appellee than to the appellants. That recitation leaves out those actions of the employer which made the program available and attractive. The availability of such conflicting permissible inferences suggested by appellants do not compel them as a matter of law, nor diminish the right of a factfinder to reject them in favor of the contrary ones supporting appellee's theory. That both are available enforces the need to submit the case to the jury.

■ The final complaints give us no pause. Appellants complain that they were not permitted to read portions of testimony of witnesses called by appellee-claimant before the Commission, a practice they concede is not permitted, *Savage Mfg. Co. v. Magne,* 154 Md. 46, 139 A. 570 (1927). They but argue that because they too had subpoenaed the same witnesses to appear at that hearing (but elected not to recall them as their own witnesses once they were examined as appellee-claimant's witnesses), appellants were permitted of right, to read their testimony. While we do not find that circumstance sufficient to overcome the *Savage* preclusion, we see no error because appellants had the same witnesses before them in the circuit court and could have examined and cross-examined them to elicit directly whatever they subsequently chose to read back indirectly from the record.

■ Finally, appellants complain that they were denied a mistrial which they sought on the ground that the appellee-claimant described his injuries on television during trial. The judge properly instructed the jury not to read any newspapers or watch any television until the trial terminated. Furthermore, the extent of his injuries were specifically excluded from the trial and were not considered by the jury. Mistrials are a matter of judicial discretion, *Kelch v. Ness,*

42 Md.App. 291, 400 A.2d 440 (1979), *cert. granted,* 285 Md. 731 (1979), *aff'd* 287 Md. 223, 411 A.2d 449 (1980), and we are quite satisfied that the denial of this mistrial motion was not an abuse. To the contrary, it was an exercise of good judgment.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANTS.